20599. ADAMSON *v.* METROPOLITAN LIFE INSURANCE COMPANY.

DECIDED DECEMBER 19, 1930. ADHERED TO ON REHEARING, FEBRUARY 17, 1931.

*Paul S. Etheridge & Son, Morgan S. Belser,* for plaintiff.

*Smith, Hammond, Smith & Bloodworth, William H. Smith,* for defendant.

BLOODWORTH, J.   Sollie B. Adamson sued the Metropolitan Life Insurance Company, alleging: that on April 28, 1927, he entered into a contract of life-insurance with said company, and, simultaneously with the issuance of said life-insurance policy, which was for $5,000, he entered into a contract with said company which the company called a "supplemental contract," and which was attached to and made a part of the original policy hereinbefore referred to; and, by the terms of said supplemental contract, and in consideration of an additional sum of $16.05 payable annually, the company agreed "that upon receipt by the company at its home office in the City of New York of due proof, on forms which will be furnished by the company, on request that the insured h'as, while said policy and this supplemental contract are in full force, and prior to the anniversary date of said policy nearest to the sixtieth birthday of the insured, become totally and permanently disabled, as the result of bodily injury or disease occurring and originating after the issuance of said policy, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, and that such disability has already continued uninterruptedly for a period of at least three months, it will, during the continuance of such disability, 1. Waive the payment of each premium falling due under said policy and this Supplemental Contract, and 2. Pay to the insured, or a person designated by him for the purpose, or if such disability is due to, or is accompanied by mental incapacity, to the beneficiary of record under said policy, a monthly income of $10 for each $1000 of insurance, or of commuted value or installments, if any, under said policy." Petitioner sued for $363.30, the same being for two items; one a premium of $163.30, which had fallen due during the insured's disability, and the payment of which the defendant had agreed to waive but which the defendant demanded of the insured, and which he paid under protest and in order to keep his policy from lapsing; the other being $50 a month for four

months, due him under the contract. Petitioner alleged: that he was wholly incapacitated for four months; that he furnished proof of his disability "after his said disability had continued uninterruptedly for a period of more than three months," as provided by the terms of the policy; and that he was "wholly unable to engage in any work, occupation or business suitable to one of his experience, training and qualifications." The pleadings clearly show that he was wholly disabled at the time that he filed proof of his disability. The defendant demurred to the petition, the demurrer was sustained and the petition dismissed, and upon this ruling the plaintiff assigns error.

It is undisputed that the plaintiff held the insurance policy, including the supplemental contract, and the petition alleged that while these were both of full force "he became totally and permanently disabled as the result of bodily injury or disease originating after the issuance of said policy, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, and that such disability has already continued uninterruptedly for a period of at least three months;" and it is shown by the supplemental contract that *during the continuance of such disability* the insurance company would "waive the payment of each premium falling due under said policy and this supplemental contract," and pay to the insured "a monthly income of $10 for each $1000 of insurance under the policy;" the only restrictions thereon being that such disability has already continued uninterruptedly for a period of at least three months, and that such payments shall not "begin of a date more than six months prior to the date of the receipt of the required proof." Here is a clean-cut contract to pay these items "during the continuance of such disability," in the event the insured has "become totally and permanently disabled." The amendment to the petition contains the affidavit of two physicians, one of whom, in an affidavit made June 13, 1929, in answer to the question "is he wholly unable to engage in any work, occupation or business suitable to one of his experience, training or qualifications?" replied, "Yes." To the same question the other physician, on June 26, 1929, answered, "At present." Both of these doctors show that on the dates of the two items for which suit was brought, the insured was "totally disabled," and that "such disability had already con-

tinued uninterruptedly for a period of at least three months." In *Penn Mutual Life Insurance Co.* v. *Milton,* 160 *Ga.* 168, 172 (127 S. E. 140, 40 A. L. R. 1382), Justice Hines, speaking for the court, said: "The word 'permanent' does not always mean forever or lasting forever. The meaning of that word is to be construed according to its nature and in its relation to the subject-matter of the contract. Mead *v.* Ballard, 7 Wall. 290 (19 L. ed. 190); Texas & Pacific Ry. Co. *v.* Marshall, 136 U. S. 393 [10 Sup. Ct. 846, 34 L. ed. 385]. The words, 'permanently and continuously', standing alone, would mean that the total disability must be a lasting one; but when these words are taken in connection with other language used in the several provisions of this policy set out above, the fair construction of these words is, not that the total disability shall last or exist forever, but that a disability which existed continuously for no less than sixty days prior to the furnishing of proof is, within the meaning of the policy, a permanent disability. The first provision quoted expressly provides that where 'such disability has existed continuously for not less than sixty days prior to the furnishing of proof, thereupon the company will grant' to the insured the benefits provided for in the policy. So it seems to us the evident purpose of the provision is that a total disability existing for a period not less than sixty days prior to the furnishing of proof thereof is to be considered a permanent disability. The other language used in these provisions strengthens this view and construction. Upon proof being furnished of such disability, 'the company by endorsement . . shall waive the payment of the premiums which thereafter may become due under this policy during the continuance of the said total disability of the insured.' This provision carries an implication that the insurer contemplated that the disability might terminate, in which event the waiver of the payment of premiums would come to an end, and the insured would have to begin to pay premiums again. It contemplates that the disability, proof of which would entitle the insured to the benefits provided, might not last forever, but might end, and that after the cessation of the total disability the benefits would cease. The monthly payments of $50 would be made 'during the continuance of said total disability of the insured and prior to the maturity of this policy.' This language clearly indicates that the insurer meant that the total disability, on

proof of which it would grant the benefits named, was not one which might last during the entire life of the insured, but one which might end prior to his death." It will be seen that the policy in the *Milton* case, supra, provided that when "such disability has existed continuously for not less than sixty days prior to the furnishing of proof thereupon the company will grant the following benefits," which benefits were named. The policy in the case under consideration provides that when "such disability has already continued uninterruptedly for a period of at least three months it [the insurer] will, during the continuance of such disability," grant certain benefits which are similar to those named in the policy in the *Milton* case. Thus it seems logical to hold that if in the *Milton* case a disability which lasted continuously for not less than sixty days prior to the furnishing of proof is, within the meaning of the policy, a *permanent* disability, a fortiori in the instant case in which the policy provides that when "such disability has already continued uninterruptedly for a period of at least three months," it should be considered a *permanent* disability. Especially is this true when the word "permanent" is to "be considered according to its nature and in its relation to the subject-matter of the contract," because the language of the policy in the instant case, like that in the *Milton* case, clearly shows "that the insurer contemplated that the disability might terminate."

Under all the particular facts of this case and in the light of the ruling in *Penn Mutual Life Ins. Co.* v. *Milton,* supra, the court erred in sustaining the demurrer and dismissing the petition.

*Judgment reversed. Broyles, C. J., and Luke, J., concur.*